IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| INDUSTRIAL PRINT TECHNOLOGIES LLC, a Texas Corporation, | ) ) | |
| | ) | Civil Action No. 2:15-cv-00025 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| QUAD/GRAPHICS, INC., a Wisconsin Corporation, and | ) ) | **JURY TRIAL DEMANDED** |
| HEWLETT-PACKARD COMPANY, a Delaware Corporation, | ) ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Industrial Print Technologies LLC ("IPT" or "Plaintiff") complains against Defendants Quad/Graphics, Inc. and Hewlett-Packard Company (collectively, "Defendants") as follows:

## NATURE OF ACTION

This is an action for patent infringement pursuant to 35 U.S.C. § 271. The patented technology, which is licensed exclusively to IPT, relates to industrial printing and provides methods for executing print jobs that incorporate variable data. The patented technology enables industrial printing presses to rapidly and efficiently process variable data print jobs. Defendants use, manufacture and/or sell high-speed printing presses that process variable data print jobs using methods that infringe the patented technology.

## THE PARTIES

1.      Plaintiff IPT is a corporation organized and existing under the laws of the State of Texas. IPT is in the business of licensing patented technology owned by Mr. Forrest P. Gauthier. IPT is the exclusive licensee for enforcement of Mr. Gauthier's rights in U.S. Patent Nos. 5,729,665 ("the '665 patent"), 5,937,153 ("the '153 patent"), 7,274,479 ("the '479 patent"), 7,333,233 ("the '233 patent") and 6,381,028 ("the '028 patent").

2.      Defendant Quad/Graphics, Inc. ("Quad/Graphics") is a corporation incorporated under the laws of Wisconsin with its principal place of business at N61 W23044 Harry's Way, Sussex, Wisconsin 53089. Quad/Graphics is registered to do business in Texas and has a designated registered agent in Texas for purposes of service of process. Quad/Graphics conducts business in and is doing business in Texas and in this District and elsewhere in the United States.

3.      Defendant Hewlett Packard Company ("HP") is a corporation incorporated under the laws of Delaware with its principal place of business at 3000 Hanover Street, Palo Alto, California.  HP's Printing business unit makes, uses, offers to sell and sells printing presses that incorporate variable data processing capabilities. HP is registered to do business in Texas and has a designated registered agent in Texas for purposes of service of process. HP conducts business in and is doing business in Texas and in this District and elsewhere in the United States, including, without limitation, using, promoting, offering to sell, selling and/or importing high-speed printing presses that process variable data print jobs in this District, and enabling end-user purchasers to use such machines in this District.

4.      Upon information and belief, Quad/Graphics and HP are jointly and severally liable and/or joint tortfeasors with one another with respect to the matters alleged herein.

## JURISDICTION AND VENUE

5.      This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.      On information and belief, Defendant Quad/Graphics is subject to this Court's general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business conducted in this forum, including (i) having solicited business in the State of Texas, transacted business within the State of Texas and attempted to derive financial benefit from residents of the State of Texas, including benefits directly related to the instant patent infringement causes of action set forth herein; and (ii) having placed its products and services into the stream of commerce throughout the United States and having been actively engaged in transacting business in Texas and in this District.

7.      On information and belief, Defendant HP is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to their substantial business conducted in this forum, including (i) having solicited business in the State of Texas, transacted business within the State of Texas and attempted to derive financial benefit from residents of the State of Texas, including benefits directly related to the instant patent infringement causes of action set forth herein; (ii) having placed their products and services into the stream of commerce throughout the United States and having been actively engaged in transacting business in Texas and in this District; and (iii) either alone or in conjunction with others, having committed acts of infringement within this District .

8.      Defendant Quad/Graphics maintains systematic, continuous and ongoing business operations within the State of Texas and this District. Quad/Graphics's facilities include plants

that it maintains in Dallas and Lufkin, Texas. Quad/Graphics also conducts other commercial printing operations at locations in Dallas and Lufkin, Texas.

9.      On information and belief, Defendant HP maintains systematic, continuous and ongoing business operations within the State of Texas and this District, through which it uses, promotes, offers to sell, sells and/or imports high speed industrial-sized printing presses. HP's facilities include a sales office that it maintains in Plano, Texas, through which it uses, promotes, offers to sell, sells, and/or imports high speed industrial-sized inkjet printing presses. Upon information and belief, HP provides product maintenance and support services to Quad/Graphics in this District.

10.      Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b) because each Defendant is subject to personal jurisdiction in this District, resides in, has regularly conducted business in this District and/or has committed acts of patent infringement in this District.

### FIRST CAUSE OF ACTION – INFRINGEMENT OF '665 PATENT

11.      Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 to 10, as if fully set forth herein.

12.      On March 17, 1998, the '665 patent, entitled "Method of Utilizing Variable Data Fields With a Page Description Language," a copy of which is attached hereto as Exhibit A, was duly and legally issued to the inventor, Forrest P. Gauthier. The '665 patent issued from U.S. patent application Serial Number 08/373,582, filed January 18, 1995. Mr. Gauthier assigned all right, title, and interest in the '665 patent to Varis Corp. Tesseron, Ltd. subsequently acquired all right, title, and interest in the '665 patent from Varis after foreclosing on Varis' assets pursuant to the Uniform Commercial Code ("UCC"). Thereafter, Tesseron assigned all right, title, and

interest in the '665 patent back to Forrest P. Gauthier. Mr. Gauthier is the present owner of all right, title, and interest in the '665 patent. Prior to the commencement of this action, Mr. Gauthier exclusively licensed all substantial rights in and to the '665 patent to Acacia Research Group, LLC ("ARG"). The license to ARG was made subject only to certain prior non-exclusive license agreements and a limited non-exclusive and non-transferable personal license grant back to Mr. Gauthier from ARG to make, use, offer to sell or sell his own products and services. Neither the prior licensees nor Mr. Gauthier owns any right to sue for or collect past, present and future damages or to seek and obtain injunctive or any other relief for infringement of the '665 patent.

13.     Mr. Gauthier further granted ARG the right to assign its license rights to a designated affiliate of ARG. Prior to the commencement of this action, ARG transferred and assigned to IPT, as its wholly owned designated affiliate, all of ARG's rights, obligations, interests and liabilities under the license agreement with Mr. Gauthier, and IPT assumed all such rights, obligations, interests and liabilities of ARG under such license agreement. IPT thus owns an exclusive license to all substantial rights under the '665 patent.

14.     The rights exclusively licensed to IPT include the worldwide, exclusive right and license to make, have made, use, import, offer to sell, and sell products covered by the '665 patent, subject only to the limited rights of prior licensees and the limited license back to Mr. Gauthier. IPT owns the exclusive right to grant sublicenses, to sue for and collect past, present and future damages and to seek and obtain injunctive or any other relief for infringement of any claim of the '665 patent. IPT further owns the exclusive right to exercise its sole judgment to decide to institute enforcement actions against any or all persons or entities that IPT believes are infringing the '665 patent, the exclusive right to bring suit to enforce the '665 patent, and the

exclusive right to settle any claims made under the '665 patent. IPT also owns the sole right to select counsel, to direct all litigation including this action, and to negotiate and determine the terms of any settlement or other disposition of all litigation including this action. IPT also owns the sole control over reexaminations and continuing prosecution of the '665 patent and related patent applications. IPT thus has standing to bring this action under the '665 patent in its own name.

15.    Defendant Quad/Graphics, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '665 patent pursuant to 35 U.S.C. § 271(a) by using methods covered by the '665 patent to set-up and run variable data print jobs and by selling and/or offering to sell related variable data printing services to its customers within the United States. Quad/Graphics has been and is engaged in direct infringing activities using variable data enabled high-speed printing presses supplied by Defendant HP—specifically including at least HP 5000, WS6800 and 7000 Indigo digital presses.

16.    Defendant Quad/Graphics, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '665 patent pursuant to 35 U.S.C. § 271(g) by selling and/or offering to sell print materials containing variable data which are made using methods covered by the '665 patent to its customers within the United States.

17.    To the extent that any steps of the methods covered by the '665 patent are performed by third-parties, such as Quad/Graphics's customers and/or their print media agents, Plaintiff alleges in the alternative that Quad/Graphics is liable for direct infringement because it directs and controls any such third-party steps including, for example, by dictating the manner by

which the third-parties must supply data to enable variable data print jobs to be run on Quad/Graphics's variable data enabled high-speed printing presses, such that Quad/Graphics is jointly and severally and/or vicariously liable for any acts performed by such third-parties on behalf of Quad/Graphics. Further, Quad/Graphics enters contracts with these third parties, through which Quad/Graphics enforces the obligations that it imposes upon third-parties.

18.     The service of this Complaint will provide Quad/Graphics with actual notice of the '665 patent and of Plaintiff's infringement allegations.

19.     Quad/Graphics's direct infringement of the '665 patent has injured IPT. IPT is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

20.     Unless enjoined by the Court, Defendant Quad/Graphics will continue to injure IPT by directly infringing the '665 patent, while lacking an objectively reasonable good faith basis to believe that its activities do not infringe any valid claim of the '665 patent. Quad/Graphics's future acts of infringement will constitute continuing willful infringement of the '665 patent.

21.     Defendant HP, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '665 patent pursuant to 35 U.S.C. § 271(a) by making, using, having made, selling, offering to sell and/or importing variable data enabled high-speed printing presses designed to practice methods covered by the '665 patent within the United States and within this District, including without limitation HP's Inkjet Web Presses, e.g., T200, T300, T350 and T400 presses (hereinafter "Inkjet Web Presses") and its Indigo Digital Presses, e.g., W3250, 3550, WS4600, 5000, 5600, WS6600, WS6600p, W7200, W7250, 7500, 7600, 10000, 20000, and 30000 presses (hereinafter "Indigo Digital

Presses"). HP's infringing printing presses include the specific models of presses sold to Quad/Graphics.

22.     HP had actual knowledge of the '665, '153 and '028 patents, and, upon information and belief, also had knowledge of the '479 and '233 patents. Specifically, HP obtained knowledge of these patents through Indigo N.V., the company that developed HP's Indigo presses. Tesseron, Ltd., as the then current owner of the '665, '153 and '028 patents, sent notice letters to Indigo N.V. A letter dated September 11, 2002 provided an opportunity to license a number of related patents, and specifically listed the '665, '153 and '028 patents. HP sent a response letter dated December 23, 2002 indicating that the patents listed in the September 11 letter were under review. Tesseron sent a second letter to Indigo dated June 25, 2003, once again suggesting discussions of a license to the entire family of patents related to the '665 patent, and also describing several applications of the variable data methods claimed in those patents. Tesseron sent a third letter to Indigo dated February 18, 2005. This letter also addressed licensing the entire family of patents related to the '665 patent, listed several new patents within that family, and attached copies of complaints that had been filed against Xerox Corporation and GMC Software AG, two of HP's competitors in the digital printing industry. HP acknowledged receipt of the letter by sending a response dated April 15, 2005.

23.     HP also obtained actual knowledge of at least the '665 patent as a result of its efforts to develop its own portfolio of patents. HP maintains a large staff of in-house patent attorneys registered to practice at the U.S. Patent and Trademark Office. The '665 patent was cited as prior art against and listed on the cover page of HP's own U.S. Patent No. 6,094,278 ("the '278 patent"). An HP in-house patent attorney is listed as the attorney of record on the face of the '278 patent. HP also obtained actual knowledge of the '665 patent as a result of

previously-filed litigation involving IPT.

24.    The service of this Complaint will provide HP with further actual notice of the '665 patent and of Plaintiff's infringement allegations herein.

25.    Defendant HP, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and continues to induce the direct infringement of the '665 patent by Quad/Graphics and other HP customers pursuant to 35 U.S.C. § 271(b) at least by one or more of supplying, offering for sale and selling its Inkjet Web Presses and/or its Indigo Digital Presses, which were designed and intended to practice methods covered by the '665 patent, and HP has supplied related training and support materials and services. Despite its awareness of the '665 patent and of the technology claimed within the '665 patent, HP has continued these acts of inducement with specific intent to cause and/or encourage such direct infringement of the '665 patent and/or with deliberate indifference of a known risk or willful blindness that such activities would cause and/or encourage direct infringement of the '665 patent.

26.    HP's direct infringement and/or inducement to infringe the '665 patent has injured IPT. IPT is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

27.    Unless enjoined by the Court, Defendant HP will continue to injure IPT by directly infringing and/or inducing the infringement of the '665 patent.

28.    Upon information and belief, Defendant HP has continued and will continue its infringement notwithstanding its actual knowledge of the '665 patent and while lacking an objectively reasonable good faith basis to believe that its activities do not infringe any valid claim of the '665 patent. As such, HP's infringement has been willful and deliberate and its future acts of infringement will constitute continuing willful infringement of the '665 patent.

### SECOND CAUSE OF ACTION – INFRINGEMENT OF '153 PATENT

29.     Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 to 28, as if fully set forth herein.

30.     On August 10, 1999, the '153 patent, entitled "Method of Utilizing Variable Data Fields With a Page Description Language," a copy of which is attached hereto as Exhibit B, was duly and legally issued to the inventor, Forrest P. Gauthier. The '153 patent issued from U.S. patent application Serial Number 08/896,899 filed July 18, 1997, and it is related to and claims legal priority to the January 18, 1995 application for the '665 patent. Its status as a member of the '665 patent family is shown in various publicly accessible patent databases. Mr. Gauthier assigned all right, title, and interest in the '153 patent to Varis Corp. Tesseron, Ltd. subsequently acquired all right, title, and interest in the '153 patent from Varis after foreclosing on Varis' assets pursuant to the UCC. Thereafter, Tesseron assigned all right, title, and interest in the '153 patent back to Forrest P. Gauthier. Mr. Gauthier is the present owner of all right, title, and interest in the '153 patent. Prior to the commencement of this action, Mr. Gauthier exclusively licensed all substantial rights in and to the '153 patent to ARG. The license to ARG was made subject only to certain prior non-exclusive license agreements and a limited non-exclusive and non-transferable personal license grant back to Mr. Gauthier from ARG to make, use, offer to sell or sell his own products and services. Neither the prior licensees nor Mr. Gauthier owns any right to sue for or collect past, present and future damages or to seek and obtain injunctive or any other relief for infringement of the '153 patent.

31.     Mr. Gauthier further granted ARG the right to assign its license rights to a designated affiliate of ARG. Prior to the commencement of this action, ARG transferred and assigned to IPT, as its wholly owned designated affiliate, all of ARG's rights, obligations,

interests and liabilities under the license agreement with Mr. Gauthier, and IPT assumed all such rights, obligations, interests and liabilities of ARG under such license agreement. IPT thus owns an exclusive license to all substantial rights under the '153 patent.

32.     The rights exclusively licensed to IPT include the worldwide, exclusive right and license to make, have made, use, import, offer to sell, and sell products covered by the '153 patent, subject only to the limited rights of prior licensees and the limited license back to Mr. Gauthier. IPT owns the exclusive right to grant sublicenses, to sue for and collect past, present and future damages and to seek and obtain injunctive or any other relief for infringement of any claim of the '153 patent. IPT further owns the exclusive right to exercise its sole judgment to decide to institute enforcement actions against any or all persons or entities that IPT believes are infringing the '153 patent, the exclusive right to bring suit to enforce the '153 patent, and the exclusive right to settle any claims made under the '153 patent. IPT also owns the sole right to select counsel, to direct all litigation including this action, and to negotiate and determine the terms of any settlement or other disposition of all litigation including this action. IPT also owns the sole control over reexaminations and continuing prosecution of the '153 patent and related patent applications. IPT thus has standing to bring this action under the '153 patent in its own name.

33.     Defendant Quad/Graphics, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '153 patent pursuant to 35 U.S.C. § 271(a) by using methods covered by the '153 patent to set-up and run variable data print jobs and by selling and/or offering to sell related variable data printing services to its customers within the United States. Quad/Graphics has been and is engaged in direct infringing activities using variable data enabled high-speed printing presses supplied by

Defendant HP—specifically including at least HP 5000, WS6800 and 7000 Indigo digital presses.

34.     Defendant Quad/Graphics, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '153 patent pursuant to 35 U.S.C. § 271(g) by selling and/or offering to sell print materials containing variable data which are made using methods covered by the '153 patent to its customers within the United States.

35.     To the extent that any steps of the methods covered by the '153 patent are performed by third-parties, such as Quad/Graphics's customers and/or their print media agents, Plaintiff alleges in the alternative that Quad/Graphics is liable for direct infringement because it directs and controls any such third-party steps, including, for example, by dictating the manner by which the third-parties must supply data to enable variable data print jobs to be run on Quad/Graphics's variable data enabled high-speed printing presses, such that Quad/Graphics is jointly and severally and/or vicariously liable for any acts performed by such third-parties on behalf of Quad/Graphics. Further, Quad/Graphics enters contracts with these third parties, through which Quad/Graphics enforces the obligations that it imposes upon third-parties.

36.     The service of this Complaint will provide Quad/Graphics with actual notice of the '153 patent and of Plaintiff's infringement allegations.

37.     Quad/Graphics's direct infringement of the '153 patent has injured IPT. IPT is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

38.     Unless enjoined by the Court, Defendant Quad/Graphics will continue to injure IPT by directly infringing the '153 patent, while lacking an objectively reasonable good faith

basis to believe that its activities do not infringe any valid claim of the '153 patent. Quad/Graphics's future acts of infringement will constitute continuing willful infringement of the '153 patent.

39.     Defendant HP, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '153 patent pursuant to 35 U.S.C. § 271(a) by making, using, having made, selling, offering to sell and/or importing variable data enabled high-speed printing presses designed to practice methods covered by the '153 patent within the United States and within this District, including without limitation HP's Inkjet Web Presses and its Indigo Digital Presses. HP's infringing printing presses include the specific models of presses sold to Quad/Graphics.

40.     As pled above, HP obtained actual knowledge of the '153 patent through Tesseron Ltd.'s notice letters to Indigo N.V., the company that developed HP's Indigo presses. Upon information and belief, HP may also have obtained actual knowledge of the '153 patent as a result of its own patent prosecution activities and/or through its investigation of Tesseron Ltd.'s patent enforcement activities in the digital printing industry. HP also obtained actual knowledge of the '153 patent as a result of previously-filed litigation involving IPT.

41.     The service of this Complaint will provide HP with further actual notice of the '153 patent and of Plaintiff's infringement allegations herein.

42.     Defendant HP, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and continues to induce the direct infringement of the '153 patent by Quad/Graphics and other HP customers pursuant to 35 U.S.C. § 271(b) at least by one or more of supplying, offering for sale and selling its Inkjet Web Presses and its Indigo Digital Presses, which were designed and intended to practice methods covered by the '153 patent, and

by supplying related training and support materials and services. Despite its awareness of the '153 patent and of the technology claimed within the '153 patent, HP has continued these acts of inducement with specific intent to cause and/or encourage such direct infringement of the '153 patent and/or with deliberate indifference of a known risk or willful blindness that such activities would cause and/or encourage direct infringement of the '153 patent.

43.     HP's direct infringement and/or inducement to infringe the '153 patent has injured IPT. IPT is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

44.     Unless enjoined by the Court, Defendant HP will continue to injure IPT by directly infringing and/or inducing the infringement of the '153 patent.

45.     Upon information and belief, Defendant HP has continued and will continue its infringement notwithstanding its actual knowledge of the '153 patent and while lacking an objectively reasonable good faith basis to believe that its activities do not infringe any valid claim of the '153 patent. As such, HP's infringement has been willful and deliberate and its future acts of infringement will constitute continuing willful infringement of the '153 patent.

### THIRD CAUSE OF ACTION – INFRINGEMENT OF '479 PATENT

46.     Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 to 45, as if fully set forth herein.

47.     On September 25, 2007, the '479 patent, entitled "Method of Utilizing Variable Data Fields With a Page Description Language," a copy of which is attached hereto as Exhibit C, was duly and legally issued to the inventor, Forrest P. Gauthier. The '479 patent issued from U.S. patent application Serial Number 10/707,955 filed January 28, 2004, and it is related to and claims legal priority to the application for the '153 patent and the January 18, 1995 application

for the '665 patent. Its status as a member of the '665 patent family is shown in various publicly accessible patent databases. Mr. Gauthier assigned all right, title, and interest in the '479 patent to Varis Corp. Tesseron, Ltd. subsequently acquired all right, title, and interest in the '479 patent from Varis after foreclosing on Varis' assets pursuant to the UCC. Thereafter, Tesseron assigned all right, title, and interest in the '479 patent to Forrest P. Gauthier. Mr. Gauthier is the present owner of all right, title, and interest in the '479 patent. Prior to the commencement of this action, Mr. Gauthier exclusively licensed all substantial rights in and to the '479 patent to ARG. The license to ARG was made subject only to certain prior non-exclusive license agreements and a limited non-exclusive and non-transferable personal license grant back to Mr. Gauthier from ARG to make, use, offer to sell or sell his own products and services.  Neither the prior licensees nor Mr. Gauthier owns any right to sue for or collect past, present and future damages or to seek and obtain injunctive or any other relief for infringement of the '479 patent.

48.      Mr. Gauthier further granted ARG the right to assign its license rights to a designated affiliate of ARG. Prior to the commencement of this action, ARG transferred and assigned to IPT, as its wholly owned designated affiliate, all of ARG's rights, obligations, interests and liabilities under the license agreement with Mr. Gauthier, and IPT assumed all such rights, obligations, interests and liabilities of ARG under such license agreement.  IPT thus owns an exclusive license to all substantial rights under the '479 patent.

49.      The rights exclusively licensed to IPT include the worldwide, exclusive right and license to make, have made, use, import, offer to sell, and sell products covered by the '479 patent, subject only to the limited rights of prior licensees and the limited license back to Mr. Gauthier. IPT owns the exclusive right to grant sublicenses, to sue for and collect past, present and future damages and to seek and obtain injunctive or any other relief for infringement of any

claim of the '479 patent. IPT further owns the exclusive right to exercise its sole judgment to decide to institute enforcement actions against any or all persons or entities that IPT believes are infringing the '479 patent, the exclusive right to bring suit to enforce the '479 patent, and the exclusive right to settle any claims made under the '479 patent. IPT also owns the sole right to select counsel, to direct all litigation including this action, and to negotiate and determine the terms of any settlement or other disposition of all litigation including this action. IPT also owns the sole control over reexaminations and continuing prosecution of the '479 patent and related patent applications. IPT thus has standing to bring this action under the '479 patent in its own name.

50.     Defendant Quad/Graphics, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '479 patent pursuant to 35 U.S.C. § 271(a) by using methods covered by the '479 patent to set-up and run variable data print jobs and by selling and/or offering to sell related variable data printing services to its customers within the United States. Quad/Graphics has been and is engaged in direct infringing activities using variable data enabled high-speed printing presses supplied by Defendant HP—specifically including at least HP 5000, WS6800 and 7000 Indigo digital presses.

51.     Defendant Quad/Graphics, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '479 patent pursuant to 35 U.S.C. § 271(g) by selling and/or offering to sell print materials containing variable data which are made using methods covered by the '479 patent to its customers within the United States.

52.     To the extent that any steps of the methods covered by the '479 patent are

performed by third-parties, such as Quad/Graphics's customers and/or their print media agents, Plaintiff alleges in the alternative that Quad/Graphics is liable for direct infringement because it directs and controls any such third-party steps, including, for example, by dictating the manner by which the third-parties must supply data to enable variable data print jobs to be run on Quad/Graphics's variable data enabled high-speed printing presses, such that Quad/Graphics is jointly and severally and/or vicariously liable for any acts performed by such third-parties on behalf of Quad/Graphics. Further, Quad/Graphics enters contracts with these third parties, through which Quad/Graphics enforces the obligations that it imposes upon third-parties.

53.    The service of this Complaint will provide Quad/Graphics with actual notice of the '479 patent and of Plaintiff's infringement allegations.

54.    Quad/Graphics's direct infringement of the '479 patent has injured IPT. IPT is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

55.    Unless enjoined by the Court, Defendant Quad/Graphics will continue to injure IPT by directly infringing the '479 patent, while lacking an objectively reasonable good faith basis to believe that its activities do not infringe any valid claim of the '479 patent. Quad/Graphics's future acts of infringement will constitute continuing willful infringement of the '479 patent.

56.    Defendant HP, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '479 patent pursuant to 35 U.S.C. § 271(a) by making, using, having made, selling, offering to sell and/or importing variable data enabled high-speed printing presses designed to practice methods covered by the '479 patent within the United States and within this District, including without limitation HP's

Inkjet Web Presses and its Indigo Digital Presses. HP's infringing printing presses include the specific models of presses sold to Quad/Graphics.

57.     Upon information and belief, HP had actual or constructive knowledge of the '479 patent as a result of its actual knowledge and investigation of the parent '153 and '665 patents and its activities monitoring and evaluating related patents. HP also obtained actual knowledge of the '479 patent as a result of previously-filed litigation involving IPT.

58.     The service of this Complaint will provide HP with further actual notice of the '479 patent and of Plaintiff's infringement allegations herein.

59.     Defendant HP, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and continues to induce the direct infringement of the '479 patent by Quad/Graphics and other HP customers pursuant to 35 U.S.C. § 271(b) at least by one or more of supplying, offering for sale and selling its Inkjet Web Presses and its Indigo Digital Presses, which were designed and intended to practice methods covered by the '479 patent, and by supplying related training and support materials and services. Despite its awareness of the '479 patent and of the technology claimed within the '479 patent, HP has continued these acts of inducement with specific intent to cause and/or encourage such direct infringement of the '479 patent and/or with deliberate indifference of a known risk or willful blindness that such activities would cause and/or encourage direct infringement of the '479 patent.

60.     HP's direct infringement and/or inducement to infringe the '479 patent has injured IPT. IPT is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

61.     Unless enjoined by the Court, Defendant HP will continue to injure IPT by directly infringing and/or inducing the infringement of the '479 patent.

62.     Upon information and belief, Defendant HP has continued and will continue its infringement notwithstanding its actual knowledge of the '479 patent and while lacking an objectively reasonable good faith basis to believe that its activities do not infringe any valid claim of the '479 patent. As such, HP's infringement has been willful and deliberate and its future acts of infringement will constitute continuing willful infringement of the '479 patent.

### FOURTH CAUSE OF ACTION – INFRINGEMENT OF '233 PATENT

63.     Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 to 62, as if fully set forth herein.

64.     On February 19, 2008, the '233 patent, entitled "Method of Utilizing Variable Data Fields With a Page Description Language," a copy of which is attached hereto as Exhibit D, was duly and legally issued to the inventor, Forrest P. Gauthier. The '233 patent issued from U.S. patent application Serial Number 10/707,920 filed January 19, 2008, and it is related to and claims legal priority to the applications for the '153 and 479 patents and the January 18, 1995 application for the '665 patent. Its status as a member of the '665 patent family is shown in various publicly accessible patent databases. Mr. Gauthier assigned all right, title, and interest in the '233 patent to Varis Corp. Tesseron, Ltd. subsequently acquired all right, title, and interest in the '233 patent from Varis after foreclosing on Varis' assets pursuant to the UCC. Thereafter, Tesseron assigned all right, title, and interest in the '233 patent to Forrest P. Gauthier. Mr. Gauthier is the present owner of all right, title, and interest in the '233 patent. Prior to the commencement of this action, Mr. Gauthier exclusively licensed all substantial rights in and to the '233 patent to ARG. The license to ARG was made subject only to certain prior non-exclusive license agreements and a limited non-exclusive and non-transferable personal license grant back to Mr. Gauthier from ARG to make, use, offer to sell to sell, and sell his own products

and services. Neither the prior licensees nor Mr. Gauthier owns any right to sue for or collect past, present and future damages or to seek and obtain injunctive or any other relief for infringement of the '233 patent.

65.     Mr. Gauthier further granted ARG the right to assign its license rights to a designated affiliate of ARG. Prior to the commencement of this action, ARG transferred and assigned to IPT, as its wholly owned designated affiliate, all of ARG's rights, obligations, interests and liabilities under the license agreement with Mr. Gauthier, and IPT assumed all such rights, obligations, interests and liabilities of ARG under such license agreement. IPT thus owns an exclusive license to all substantial rights under the '233 patent.

66.     The rights exclusively licensed to IPT include the worldwide, exclusive right and license to make, have made, use, import, offer or sell products covered by the '233 patent, subject only to the limited rights of prior licensees and the limited license back to Mr. Gauthier. IPT owns the exclusive right to grant sublicenses, to sue for and collect past, present and future damages and to seek and obtain injunctive or any other relief for infringement of any claim of the '233 patent. IPT further owns the exclusive right to exercise its sole judgment to decide to institute enforcement actions against any or all persons or entities that IPT believes are infringing the '233 patent, the exclusive right to bring suit to enforce the '233 patent, and the exclusive right to settle any claims made under the '233 patent. IPT also owns the sole right to select counsel, to direct all litigation including this action, and to negotiate and determine the terms of any settlement or other disposition of all litigation including this action. IPT also owns the sole control over reexaminations and continuing prosecution of the '233 patent and related patent applications. IPT thus has standing to bring this action under the '233 patent in its own name.

67.     Defendant Quad/Graphics, directly and/or through its subsidiaries, affiliates,

agents, and/or business partners, has in the past and continues to directly infringe the '233 patent pursuant to 35 U.S.C. § 271(a) by using methods covered by the '233 patent to set-up and run variable data print jobs and by selling and/or offering to sell related variable data printing services to its customers within the United States. Quad/Graphics has been and is engaged in direct infringing activities using variable data enabled high-speed printing presses supplied by Defendant HP—specifically including at least HP 5000, WS6800 and 7000 Indigo digital presses.

68.     Defendant Quad/Graphics, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '233 patent pursuant to 35 U.S.C. § 271(g) by selling and/or offering to sell print materials containing variable data which are made using methods covered by the '233 patent to its customers within the United States.

69.     To the extent that any steps of the methods covered by the '233 patent are performed by third-parties, such as Quad/Graphics's customers and/or their print media agents, Plaintiff alleges in the alternative that Quad/Graphics is liable for direct infringement because it directs and controls any such third-party steps, including, for example, by dictating the manner by which the third-parties must supply data to enable variable data print jobs to be run on Quad/Graphics's variable data enabled high-speed printing presses, such that Quad/Graphics is jointly and severally and/or vicariously liable for any acts performed by such third-parties on behalf of Quad/Graphics. Further, Quad/Graphics enters contracts with these third parties, through which Quad/Graphics enforces the obligations that it imposes upon third-parties.

70.     The service of this Complaint will provide Quad/Graphics with actual notice of the '233 patent and of Plaintiff's infringement allegations.

71.     Quad/Graphics's direct infringement of the '233 patent has injured IPT. IPT is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

72.     Unless enjoined by the Court, Defendant Quad/Graphics will continue to injure IPT by directly infringing the '233 patent, while lacking an objectively reasonable good faith basis to believe that its activities do not infringe any valid claim of the '233 patent. Quad/Graphics's future acts of infringement will constitute continuing willful infringement of the '233 patent.

73.     Defendant HP, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '233 patent pursuant to 35 U.S.C. § 271(a) by making, using, having made, selling, offering to sell and/or importing variable data enabled high-speed printing presses designed to practice methods covered by the '233 patent within the United States and within this District, including without limitation HP's Inkjet Web Presses and its Indigo Digital Presses. HP's infringing printing presses include the specific models of presses sold to Quad/Graphics.

74.     Upon information and belief, HP had actual or constructive knowledge of the '233 patent as a result of its actual knowledge and investigation of the parent '153 and '665 patents and its activities monitoring and evaluating related patents. HP also obtained actual knowledge of the '233 patent as a result of previously-filed litigation involving IPT.

75.     The service of this Complaint will provide HP with further actual notice of the '233 patent and of Plaintiff's infringement allegations herein.

76.     Defendant HP, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and continues to induce the direct infringement of the '233 patent

by Quad/Graphics and other HP customers pursuant to 35 U.S.C. § 271(b) at least by one or more of supplying, offering for sale and selling its Inkjet Web Presses and its Indigo Digital Presses, which were designed and intended to practice methods covered by the '233 patent, and by supplying related training and support materials and services. Despite its awareness of the '233 patent and of the technology claimed within the '233 patent, HP has continued these acts of inducement with specific intent to cause and/or encourage such direct infringement of the '233 patent and/or with deliberate indifference of a known risk or willful blindness that such activities would cause and/or encourage direct infringement of the '233 patent.

77.     HP's direct infringement and/or inducement to infringe the '233 patent has injured IPT. IPT is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

78.     Unless enjoined by the Court, Defendant HP will continue to injure IPT by directly infringing and/or inducing the infringement of the '233 patent.

79.     Upon information and belief, Defendant HP has continued and will continue its infringement notwithstanding its actual knowledge of the '233 patent and while lacking an objectively reasonable good faith basis to believe that its activities do not infringe any valid claim of the '233 patent. As such, HP's infringement has been willful and deliberate and its future acts of infringement will constitute continuing willful infringement of the '233 patent.

### FIFTH CAUSE OF ACTION – INFRINGEMENT OF '028 PATENT

80.     Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 to 79 as if fully set forth herein.

81.     On April 30, 2002, the '028 patent, entitled "Method of Utilizing Variable Data Fields With A Page Description Language," a copy of which is attached hereto as Exhibit E, was

duly and legally issued to the inventor, Forrest P. Gauthier. The '028 patent issued from U.S. patent application Serial Number 09/299,502, filed April 26, 1999.

82.     Mr. Gauthier assigned all right, title, and interest in the '028 patent to Varis Corp. Tesseron Ltd. subsequently acquired all right, title, and interest in the '028 patent from Varis after foreclosing on Varis' assets pursuant to the UCC. Thereafter, Tesseron assigned all right, title, and interest in the '028 patent back to Forrest P. Gauthier. Mr. Gauthier is the present owner of all right, title, and interest in the '028 patent. Prior to the commencement of this action, Mr. Gauthier exclusively licensed all substantial rights in and to the '028 patent to ARG. The license to ARG was made subject only to certain prior non-exclusive license agreements and a limited non-exclusive and non-transferable personal license grant back to Mr. Gauthier from ARG to make, use, offer to sell or sell his own products and services. Neither the prior licensees nor Mr. Gauthier owns any right to sue for or collect past, present and future damages or to seek and obtain injunctive or any other relief for infringement of the '028 patent.

83.     Mr. Gauthier further granted ARG the right to assign its license rights to a designated affiliate of ARG. Prior to the commencement of this action, ARG transferred and assigned to IPT, as its wholly owned designated affiliate, all of ARG's rights, obligations, interests and liabilities under the license agreement with Mr. Gauthier, and IPT assumed all such rights, obligations, interests and liabilities of ARG under such license agreement. IPT thus owns an exclusive license to all substantial rights under the '028 patent.

84.     The rights exclusively licensed to IPT include the worldwide, exclusive right and license to make, have made, use, import, offer to sell, and sell products covered by the '028 patent, subject only to the limited rights of prior licensees and the limited license back to Mr. Gauthier. IPT owns the exclusive right to grant sublicenses, to sue for and collect past, present

and future damages and to seek and obtain injunctive or any other relief for infringement of any claim of the '028 patent. IPT further owns the exclusive right to exercise its sole judgment to decide to institute enforcement actions against any or all persons or entities that IPT believes are infringing the '028 patent, the exclusive right to bring suit to enforce the '028 patent, and the exclusive right to settle any claims made under the '028 patent. IPT also owns the sole right to select counsel, to direct all litigation including this action, and to negotiate and determine the terms of any settlement or other disposition of all litigation including this action. IPT also owns the sole control over reexaminations and continuing prosecution of the '028 patent and related patent applications. IPT thus has standing to bring this action under the '028 patent in its own name.

85.     On December 21, 2012, an ex parte request for reexamination of claim 4 of the '028 patent was submitted to the United States Patent and Trademark Office ("USPTO"). On December 19, 2014, the USPTO confirmed the patentability of claim 4 without amendment and issued a reexamination certificate, attached hereto as Exhibit F.

86.     Defendant Quad/Graphics, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '028 patent pursuant to 35 U.S.C. § 271(a) by using methods covered by the '028 patent to set-up and run variable data print jobs and by selling and/or offering to sell related variable data printing services to its customers within the United States. Quad/Graphics has been and is engaged in direct infringing activities using variable data enabled high-speed printing presses supplied by Defendant HP—specifically including at least HP 5000, WS6800 and 7000 Indigo digital presses.

87.     Defendant Quad/Graphics, directly and/or through its subsidiaries, affiliates,

agents, and/or business partners, has in the past and continues to directly infringe the '028 patent pursuant to 35 U.S.C. § 271(g) by selling and/or offering to sell print materials containing variable data which are made using methods covered by the '028 patent to its customers within the United States.

88.     To the extent that any steps of the methods covered by the '028 patent are performed by third-parties, such as Quad/Graphics's customers and/or their print media agents, Plaintiff alleges in the alternative that Quad/Graphics is liable for direct infringement because it directs and controls any such third-party steps including, for example, by dictating the manner by which the third-parties must supply data to enable variable data print jobs to be run on Quad/Graphics's variable data enabled high-speed printing presses, such that Quad/Graphics is jointly and severally and/or vicariously liable for any acts performed by such third-parties on behalf of Quad/Graphics. Upon information and belief, Quad/Graphics provides an Internet website portal through which it provides its products and services to third-party customers and their print media agents. The website portal and/or instructions provided through the website portal direct these third-parties to provide print specification files such that Quad/Graphics can process variable data print jobs according to the remaining steps of the patented invention. Further, Quad/Graphics enters into contracts with these third parties, through which Quad/Graphics enforces the obligations that it imposes upon third-parties.

89.     Quad/Graphics obtained actual knowledge of at least the '028 patent as a result of its efforts to develop its own portfolio of patents. The '028 patent was cited as prior art against and listed on the cover page of Quad/Graphics' own U.S. Patent No. 8,605,322.

90.     The service of this Complaint will provide Quad/Graphics with further actual notice of the '028 patent and of Plaintiff's infringement allegations.

91.     Quad/Graphics's direct infringement of the '028 patent has injured IPT. IPT is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

92.     Unless enjoined by the Court, Defendant Quad/Graphics will continue to injure IPT by directly infringing the '028 patent, while lacking an objectively reasonable good faith basis to believe that its activities do not infringe any valid claim of the '028 patent. Quad/Graphics's future acts of infringement will constitute continuing willful infringement of the '028 patent.

93.     Defendant HP, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '028 patent pursuant to 35 U.S.C. § 271(a) by making, using, having made, selling, offering to sell and/or importing variable data enabled high-speed printing presses designed to practice methods covered by the '028 patent within the United States and within this District, including without limitation HP's Inkjet Web Presses and its Indigo Digital Presses. HP's infringing printing presses include the specific models of presses sold to Quad/Graphics.

94.     As pled above, HP obtained actual knowledge of the '028 patent through Tesseron Ltd.'s notice letters to Indigo N.V., the company that developed HP's Indigo presses. Upon information and belief, HP may also have obtained actual knowledge of the '028 patent as a result of its own patent prosecution activities and/or through its investigation of Tesseron Ltd.'s patent enforcement activities in the digital printing industry. HP also obtained actual knowledge of the '028 patent as a result of previously-filed litigation involving IPT.

95.     The service of this Complaint will provide HP with further actual notice of the '028 patent and of Plaintiff's infringement allegations herein.

96.     Defendant HP, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has induced and continues to induce the direct infringement of the '028 patent by Quad/Graphics and other HP customers pursuant to 35 U.S.C. § 271(b) at least by one or more of supplying, offering for sale and selling its Inkjet Web Presses and its Indigo Digital Presses, which were designed and intended to practice methods covered by the '028 patent, and HP has supplied related training and support materials and services. Despite its awareness of the '028 patent and of the technology claimed within the '028 patent, HP has continued these acts of inducement with specific intent to cause and/or encourage such direct infringement of the '028 patent and/or with deliberate indifference of a known risk or willful blindness that such activities would cause and/or encourage direct infringement of the '028 patent.

97.     HP's direct infringement and/or inducement to infringe the '028 patent has injured IPT. IPT is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

98.     Unless enjoined by the Court, Defendant HP will continue to injure IPT by directly infringing and/or inducing the infringement of the '028 patent.

99.     Upon information and belief, Defendant HP has continued and will continue its infringement notwithstanding its actual knowledge of the '028 patent and while lacking an objectively reasonable good faith basis to believe that its activities do not infringe any valid claim of the '028 patent. As such, HP's infringement has been willful and deliberate and its future acts of infringement will constitute continuing willful infringement of the '028 patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for:

1.      Judgment that the '665, '153, '479, '233 and '028 patents are each valid, enforceable, and infringed by each Defendant;

2.      Judgment that Defendants' acts of patent infringement are willful;

3      A permanent injunction enjoining each Defendant, its officers, agents, servants, employees, subsidiaries and affiliated companies, and those persons acting in active concert or participation therewith, from engaging in the aforesaid unlawful acts of patent infringement;

4.      An award of damages arising out of each Defendant's acts of patent infringement, together with pre-judgment and post-judgment interest;

5.      Judgment that the damages so adjudged be trebled in accordance with 35 U.S.C. § 284;

6.      An award of Plaintiff's attorneys' fees, costs and expenses incurred in this action in accordance with 35 U.S.C. § 285; and

7.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

IPT demands trial by jury of all issues triable of right by a jury.

## RESERVATION OF RIGHTS

IPT's investigation is ongoing, and certain material information remains in the sole possession of the Defendants or third parties, which will be obtained via discovery herein. IPT expressly reserves the right to amend or supplement the causes of action set forth herein in accordance with Rule 15 of the Federal Rules of Civil Procedure.

Respectfully submitted,

Date:    January 16, 2015              /s/Timothy P. Maloney
                                      Timothy P. Maloney (IL 6216483)
                                      LEAD ATTORNEY
                                      Alison A. Richards (IL 6285669)
                                      Nicole L. Little (IL 6297047)
                                      David A. Gosse (IL 6299892)
                                      FITCH, EVEN, TABIN & FLANNERY LLP
                                      120 South LaSalle Street, Suite 1600
                                      Chicago, Illinois 60603
                                      Telephone: (312) 577-7000
                                      Facsimile: (312) 577-7007

                                      Steven C. Schroer (IL 6250991)
                                      FITCH, EVEN, TABIN & FLANNERY LLP
                                      1942 Broadway, Suite 213
                                      Boulder, Colorado 80302
                                      Telephone: (303) 402-6966
                                      Facsimile: (303) 402-6970

                                      T. John Ward, Jr.
                                      Texas State Bar No. 00794818
                                      Email: jw@wsfirm.com
                                      Wesley Hill
                                      Texas State Bar No. 24032294
                                      Email: wh@wsfirm.com
                                      WARD & SMITH
                                      Post Office Box 1231
                                      Longview, TX 75606
                                      Telephone: (903) 757-6400
                                      Facsimile: (903) 757-2323

                                      **ATTORNEYS FOR PLAINTIFF**